**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 24-31596** |
| **MMA LAW FIRM, PLLC,** | § | **Chapter 11** |
| | § | |
| Debtor. | § | |

---

| | | |
|---|---|---|
| **CRISTÓBAL M. GALINDO, P.C. D/B/A** | § | |
| **GALINDO LAW,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Adversary Proceeding No. 25-03310** |
| **vs.** | § | |
| | § | |
| **MMA LAW FIRM, PLLC,** | § | |
| | § | |
| Defendant. | § | |

**CRISTÓBAL M. GALINDO, P.C. D/B/A GALINDO LAW FIRM'S
<u>RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>
(Relates to Docket No. 74)**

TO THE HONORABLE EDUARDO V. RODRIGUEZ
CHIEF UNITED STATES BANKRUPTCY JUDGE:

      COMES NOW Cristóbal M. Galindo, P.C. d/b/a Galindo Law Firm ("**GLF**" or "**Galindo**"

or the "**Plaintiff**") and files this *Response* to MMA Law Firm, PLLC's ("**MMA**" or the

"**Defendant**") *Motion for Summary Judgment* (the "**MSJ**") [Docket No. 74]. As discussed in more

detail herein, the MSJ should be denied for, *inter alia*, as procedurally defective and wholly lacking

in evidence. The MJS is based entirely on two sentences that, combined, only assert that John

Zachary Moseley lacks personal knowledge of GLF's actions. Such scant evidence cannot support

a MSJ. Further, even if the Court were to consider the MSJ, the instant Response raises sufficient

1

factual issues. In support thereof, GLF would respectfully show as follows:

## I.      BANKRUPTCY PROCEDURAL FACTUAL BACKGROUND

1.      On April 9, 2024 (the "**Petition Date**"), the Debtor filed a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code (the "**Bankruptcy Case**"). The Debtor has continued as an operating Debtor-in Possession.

2.      On August 13, 2024, GLF timely filed Proof of Claim No. 47 (or 47-1) (the "**POC**").

3.      On February 5, 2025, the Debtor filed its Objection to Proof of Claim No. 47 [47-1], Filed by Cristóbal M. Galindo, P.C. (the "**Objection**") [Docket No. 518 in the Bankruptcy Case].

4.      On March 7, 2025, GLF filed its Motion for Leave to Amend its Proof of Claim (the "**Motion for Leave**") [Docket No. 580 in the Bankruptcy Case]. On April 28, 2025, this Court held a hearing on the Motion for Leave. The Court entered an Order that converted the Motion for Leave to Amend Proof Claim 47-1, filed by GLF, and the Debtor's Objection, to the above-styled adversary proceeding (the "**Adversary**") [Docket No. 1].

5.      On May 12, 2025, GLF filed its Complaint, which sought, *inter alia*, a declaratory judgment that its portion of fees (discussed below) from cases in which it jointly represented clients with the Defendant were not property of the Estate, and seeking turnover of such monies. It also asserted claims for breach of contract, *quantum meruit*, unjust enrichment, and conversion.

6.      On June 6, 2025, MMA filed its MSJ.

## II.      PRE-PETITION FACTUAL BACKGROUND

7.      For over a decade, GLF has been a law firm that handles high volumes of personal injury and/or tort cases. See, the Declaration of Cristóbal M. Galindo (the "**Galindo**

**Declaration**"), attached hereto as Exhibit A, and incorporated herein for all purposes. The founder of GLF is Cristóbal M. Galindo ("**Mr. Galindo**").

8.      Upon information and belief, MMA initially focused on commercial storm damage claims in Texas and Louisiana.

9.      On August 27, 2020, Hurricane Laura made landfall in Cameron, Louisiana, as a Category 4 hurricane.

10.      On October 9, 2020, Hurricane Delta made landfall approximately 15 miles from Cameron, Louisiana, as a Category 2 hurricane.

11.      On October 26, 2020, seizing on an opportunity to obtain mass tort cases, MMA registered with the Louisiana Secretary of State and, upon information and belief, MMA opened its first office in Louisiana. Neither Mr. Moseley nor Mr. McClenny were and/or are licensed in Louisiana, so they brought in, *inter alia*, William Huye, III, who was licensed in Louisiana (and has since been disbarred), and several other young attorneys, some of whom subsequently received varying lengths and severity of professional discipline by the Louisiana State Bar.

12.      October 28, 2020, Hurricane Zeta, made landfall in Terrebonne Parish, Louisiana, as a Category 3 hurricane.

13.      On August 29, 2021, Hurricane Ida made landfall in Lafourche Parish, Louisiana, as a Category 4 hurricane.

A.      <u>Formation of Relationship Between MMA and GLF</u>

14.      In early 2021, a person known to both MMA and GLF arranged for a meeting between Mr. Moseley, Mr. Galindo and himself to discuss the possibility of a relationship between MMA and GLF. *See*, the Galindo Declaration.

15.      Subsequently, in February 2021, Mr. Moseley and Mr. Galindo met over a few days

in Scottsdale, Arizona, and discussed further details of a possible co-counsel relationship (not GLF referrals) on first-party property damage cases, mainly located in Louisiana. *Id.* Mr. Galindo was very impressed by Mr. Moseley's representations that he and his firm (MMA) had developed the ability to handle mass tort claims on a scale that had been rarely if ever done. *Id.* Mr. Moseley convinced Mr. Galindo that MMA had the infrastructure in place to handle the claims and that MMA only needed to obtain the cases. *Id.*

16.      At that time, GLF already had its own first-party property damage docket, personal injury docket, and mass tort docket and other co-counsel but was interested in diversifying. *Id.* The discussions in Scottsdale led to an arrangement wherein Mr. Galindo would assist Mr. Moseley in obtaining the first-party property damage cases and GLF would assist MMA in handling the cases that they co-counseled together while combining Mr. Galindo's extensive experience with Mr. Moseley's experience. *Id.*

17.      In reliance upon the conversations between Mr. Galindo and Mr. Moseley and Mr. Moseley's representations, GLF obtained more than 5,000 potential clients between approximately November 2021 and September 2022, to co-counsel with MMA. *Id.* Thereafter, MMA and GLF entered into more than 5,000 agreements with the clients (collectively, and individually, the "**Insured(s)**") relating to hurricane damages and in several states, including, but not limited to, Louisiana (collectively, and individually, the "**Retainers**"). *Id.* The executed Retainers formed the basis of the "**MMA/GLF Cases**." *Id.* Each of the Retainers are materially the same except for filling in the blanks relative to each Insured and execution by the Insureds. *Id.* A blank copy of the Retainer is attached hereto as Exhibit G, and incorporated herein for all purposes.

      B.      <u>**The Retainers**</u>

18.      The Motion for Summary Judgment appears to make a misguided attempt to

4

"lump" over 5,000 Retainers together as one. It attempts to simplify that any actions or lack of actions automatically apply to each Case. Nothing is further from the truth. Every one of the Retainers constitutes a separate contract with a separate client/Insured. Each Retainer and Case must be evaluated on its own set of facts and not lumped together as a group. Every one of the Retainers must be individually analyzed.[1]

19.     Paragraph 1 of the Retainers provides that "**Parties to this Contract.** The undersigned clients . . . hires [MMA] and Co-Counsel (collectively, "**Attorneys**") [defined in Footnote 1 of the Retainer as Krause and Kinsman Trial Lawyers, LLP ("**K&K**"), MMA, and GLF] as Client's attorneys…." Paragraph 1 of the Retainer. *See*, Exhibit G, attached hereto and incorporated herein for all purposes. Therefore, the Insured(s), MMA, GLF, and K&K are parties to the Retainers.

20.     The Retainers also expressly state that they are fee sharing agreements and that "Client consents to Counsel's **joint representation** of client and Counsel's fee sharing agreement per which each will receive the following share of Counsel's Fees and Costs payable by Client per this agreement: … " (1) MMA will receive 37-1/2%; (2) GLF will receive 50%, and (3) K&K will receive 12.5%." See Footnote 1 of the Retainers. Exhibit G (emphasis added).

   C.     <u>MMA's Louisiana Legal Issues</u>

21.     As discussed above, by October 2022, MMA began experiencing legal issues (the "**LA Legal Issues**") with the Western District of Louisiana ("**WDLA**"), the Eastern District of Louisiana ("**EDLA**") and the Middle District of Louisiana ("**MDLA**"). Galindo Declaration.

---

[1] GLF notes that statistical sampling may be appropriate in the instant case. *See, e.g.*, United States v. 449 Cases Containing Tomato Paste, 212 F.2d 567 (2nd Cir. 1954); *see also E.K. Hardison Seed Co. v. Jones*, 149 F.2d 252 (6th Cir. 1945); *see also 14 United States v. 43 1/2 Gross Rubber Prophylactics*, 65 F. Supp. 534 (D.Minn. 1946), aff'd, 159 F.2d 881 (8th Cir. 1947). GLF's statement that each agreement must be analyzed is not intended to elinate the opportunity to employ valid statistical sampling. However, the MSJ does not attempt any valid or recognized statistical sampling and, rather, just relies on conclusory statements.

22.    Further, pursuant to the LA Legal Issues, MMA closed its offices in Louisiana and most of the Insureds found new representation. Galindo Declaration.

### III.    LEGAL STANDARD

23.    Summary judgment is appropriate under FED. R. CIV. P. 56 if the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Washington v. Allstate Ins. Co*., 901 F.2d 1281, 1286 (5th Cir. 1990) (*quoting* Fed. R. Civ. P. 56). "The pleadings, depositions, admissions, and answers to interrogatories, together with affidavits, must demonstrate that no genuine issue of material fact remains." *Id.* (*citing Celotex Corp v. Catrett,* 477 U.S. 317, 322-23 (1986)). To that end, this Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Id.* (quoting *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986)). "Where the record taken as [a] whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986)).

### IV.    ARGUMENT AND AUTHORITIES

#### A.    The MSJ is Procedurally Defective and Should be Denied

24.    As a threshold matter, Defendant's motion is a "no evidence" motion for summary judgment, which is generally not appropriate in federal court. "The 'no evidence' standard does not apply in federal courts. The 'no evidence' standard only applies in Texas state courts." *Perry v. One Sugar Lakes Prof'l Ctr. Partners, LP* (*In re Perry*), Nos. 08-32362-H4-11, 08-03465, 2009 Bankr. LEXIS 5694, at *5-6 (Bankr. S.D. Tex. Aug. 26, 2009). A defendant "cannot win summary judgment merely by repeating that Plaintiff has 'no evidence' throughout their motion. Rather,

although the federal standard does not require Defendants to produce additional evidence negating

Plaintiff's evidence, they nevertheless "bear[] the initial responsibility of informing the district

court of the basis for [their] motion, and identifying those portions of the [record] which [they]

believe[] demonstrate the absence of a genuine issue of material fact." *Leon v. Reyes*, No. 7:23-

cv-00045, 2023 U.S. Dist. LEXIS 224407, at *3-4 (S.D. Tex. Dec. 18, 2023). Thus, the motion

should be denied for this reason alone.

25.     The MSJ expressly presents itself as a "no-evidence" summary motion ([MSJ,

Paragraphs 1-2). However, the only case it cites that even mentions a no evidence summary

judgment motion is *Austin v. Kroger Tex., L.P.*, 864 F.3d 326 (5th Cir. 2017). However, MMA

fails to even attempt to meet the standards for pleading a "no evidence" summary judgment set

forth in *Kroger*. *Kroger* provides, in pertinent part:

> . . . when the nonmovant has the burden of proof at trial, the moving
> party may make a proper summary judgment motion, thereby
> shifting the summary judgment burden to the nonmovant, with ***an
> allegation that the nonmovant has failed to establish an element
> essential to that party's case.***

*Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) (emphasis added).

26.     MMA has failed, apparently intentionally so, to identify a single element of any of

GLF's causes of action that MMA believes GLF lacks proof on.

27.     As a brief reminder to the Court, GLF's Original Complaint Against MMA (Docket

No. 39) asserted causes of action for 1) Declaratory Judgment that the GLF Portion is not property

of the bankruptcy estate; 2) Turnover; 3) Breach of Contract; 4) *Quantum Meruit*; 5) Unjust

Enrichment; and 6) Conversion. MMA makes no effort, and apparently just wants to leave it to

this Court to work through, to identify which causes of action are supposedly disposed of by the

MSJ. It appears that MMA is arguing that GLF cannot satisfy the breach of contract cause of action

requirements. However, MMA does not address any of the other causes of action.

28.     Further, MMA's assertion that GLF lacks evidence that GLF worked on cases is, itself made without proof. The only remotely passable evidence MMA provides is Mr. Moseley's declaration, which states in pertinent part:

> I am unaware of any legal work performed by any attorney working for Cristobal M. Galindo, P.C. for any client represented by MMA.
>
> If an attorney at Cristobal M. Galindo, P.C. had performed actual legal work on behalf of a client also represented by MMA, I would have actual knowledge of that fact.

Declaration of John Zachary Moseley, Paragraphs 6 and 7 (the "**Moseley Declaration**") (Docket No. 74-1).

29.     Thus, the Moseley Declaration fails entirely to state: 1) what time period Mr. Moseley's supposed knowledge applies to (this is particularly relevant because MMA lost control of many of the cases after the LA Legal Issues); 2) the basis for Mr. Moseley's asserted knowledge; and 3) whether MMA conducted any discovery regarding the question of what work GLF performed.

30.     For the foregoing reasons, GLF respectfully asserts the Court should deny the MSJ on the basis that it fails procedurally.

**B.     MMA Has Not Met Its Burden**

31.     As discussed above, the MSJ is wholly lacking in evidence other than two sentences indicating that Mr. Moseley does not know of GLF attorney working on the Cases and that surely he would know. GLF respectfully asserts that such a bald showing is insufficient for summary judgment. The MSJ fails to state what time period Mr. Moseley's purported knowledge or lack of knowledge applies to. The MSJ also fails to state, or even assert, how much work MMA supposedly did on the Cases. MMA's failure to identify or assert how much work it supposedly

performed on the Cases makes it impossible for this Court to determine whether GLF contributed a proportionate amount of work.

32.     Accordingly, GLF believes this Court should deny the MSJ on the grounds that MMA has failed to meet its burden.

### C.     Genuine Issues of Material Fact Preclude Summary Judgment

33.     Even if the "no-evidence" standard applied, there is sufficient evidence in the record, even at this very early stage in the litigation, to defeat summary judgment. The Plaintiff bases its entire motion on the bald assertion that the Plaintiff performed no legal work in the Cases. Thus, the primary factual issue raised by the instant MSJ is whether GLF performed legal work. GLF has included in this Response countervailing testimonial evidence indicating that legal work was performed.

34.     The Cases are/were pending in Texas, Louisiana, and Mississippi, all three of which allow the sharing of fees without proportionality:

> **Texas**. To share fees in Texas, it is necessary that the division is: "(i) in proportion to the professional services performed by each lawyer; *or* (ii) made between lawyers who assume joint responsibility for the representation." TEX. R. PROF. CONDUCT Rule 1.04(f)(1). Thus, if the attorney assumes joint responsibility for the representation, it is not necessary that they perform 50% of the work to obtain 50% of the fee.

> **Louisiana**. To share fees in Louisiana, the attorney must render "meaningful services." La. St. Bar Ass'n Art XIV 1.5. Work "potentially can be 'meaningful' even if it is not time consuming or involves only client-relations activities." https://lalegalethics.org/louisiana-rules-of-professional-conduct/article-1-client-lawyer-relationship/rule-1-5-fees/

> **Mississippi.** Like Texas, to share fees in Mississippi the division must be "in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation." MISS. R. PROF. CONDUCT, 1.5(e)(1). Again, proportionality is not required if the referring lawyer assumes joint responsibility for the representation.

35.     Here, the evidence shows that GLF both assumed joint responsibility for the Cases and performed meaningful work, satisfying the standard for its fee in all 3 states.

36.     First, the Retainers make clear that GLF assumed joint responsibility for the Cases. The Retainers do not differentiate between GLF, MMA, and Krause except in terms of their percentage share of fees. Exhibit G. Thus, they all had the same responsibility for the Cases, and the clients expressly consented to the "joint representation." *Id.* at p. 1 n.1

37.     Second, the evidence shows that GLF performed meaningful legal work on the Cases. Adam Krause of K&K, co-counsel with GLF and MMA, testified in deposition that GLF performed meaningful legal work along with MMA and Krause:

> Galindo Law Firm was responsible for intake of plaintiffs who were seeking representation for hurricane litigation. And Galindo Law Firm, you know, also did a number of other things like client outreach and a number of things throughout the litigation. But they did the client intake. They did -- you know, certainly, dealt with hostile clients. And you know, they delivered checks. And they did a number of other things as well, too. But that's kind of how the -- the three groups worked together.

*Deposition of Adam Krause* ("**Krause Deposition**"), Exhibit D, attached hereto and incorporated herein for all purposes. 40:21 - 41:5.

38.     In particular, GLF evaluated the cases on legal grounds upon intake. As Mr. Krause testified:

> [Galindo] was vetting the cases, determining if the cases were, you know, valid. He was obtaining some of the insurance information of the claimants. You know, he was responsible for vetting out if the case was going to be potentially viable or not or, you know, whether or not the -- the client -- you know, right, there's some people that call in that are just simply interested. You know, he -- he would be responsible for determining whether or not this claimant would have an actual valid potential first-party hurricane litigation claim.

*Krause Deposition*, Exhibit D, 43:17 - 44:4.

10

39.    Further, "Galindo Law Firm did its part with respect to vetting, bringing cases, and determining if they had some level of chance of success on the merits." *Krause Deposition*, Exhibit D, 46:19 – 47:1. Further still, "[GLF] had attorneys on staff reviewing the claims." *Id.* Deposition, 68:7-8.

40.    GLF was also took responsibility of counseling upset clients. As Mr. Krause testified:

> Well, throughout the litigation, [GLF] was also tasked and responsible -- if you had clients that were just kind of upset, you know, many -- some people at his firm would handle the clients that were really upset for things taking too long or, you know -- especially during these types of cases, they're upset about a lot of different things, you know. There's water leaking into their roof and into their properties. And -- and so his firm would handle many of the hostile complaints. They had a number of folks over there that were good at speaking with claimants like that."

*Krause Deposition*, Exhibit D, 44:8-20.

41.    It follows from the foregoing evidence, viewed in the light most favorable to the non-moving party (GLF), that GLF performed meaningful legal work, or that there is at least a fact issues regarding it, precluding summary judgment.

**D.**    **The MSJ Fails as a Matter of Logic and Law**

42.    Beyond the genuine issues of material fact identified above, GLF believes MMA's MSJ should be denied as a matter of logic and law.

43.    First, as discussed above, the MSJ fails to assert or allege how much work MMA and K&K performed on the Cases. Accordingly, it is impossible for this Court to determine the proportion of work performed by GLF, MMA, and K&K. GLF asserts the failure further supports the idea that MMA has failed to meet its factual burden but, for the purposes of this section, GLF notes that the failure also means the MSJ fails as a matter of logic.

44.     Second, as indicated in the Galindo Declaration, MMA at least partially performed on the Retainers prior to filing bankruptcy. Because MMA partially performed, its course of conduct belies its argument that GLF is not entitled to any fees under the Retainers

45.     Third, the MSJ fails to address any element of GLF's Complaint. Accordingly, the MSJ fails to even allege that GLF does not have evidence with respect to any element of any cause of action.

## V.      OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

46.     Pursuant to Rule 56(c)(2) of the Federal Rules of Civil Procedure, a party may object that material cited in support of a motion for summary judgment "cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2). While the proponent of summary judgment evidence need not submit materials in admissible form at the summary judgment stage, they must demonstrate that the materials can ultimately be presented in admissible form at trial. See FED. R. BANKR. PROC. 7056; *Balboa Cap. Corp. v. Okoji Home Visits MHT, L.L.C.*, 111 F.4th 536, 546–47 (5th Cir. 2024).

47.     MMA objects to the Court's consideration of the Moseley Declaration because it fails to establish personal knowledge, or even assert a basis for personal knowledge, for his assertion that "[i]f an attorney at Cristobal M. Galindo, P.C. had performed actual legal work on behalf of a client also represented by MMA, [he] would have actual knowledge of that fact." It does not state, for instance, that Moseley has actual knowledge of every attorney that worked on every case. It does not even assert that Moseley has personal knowledge of the purported facts asserted in his declaration.

48.     As this Court is aware, personal knowledge is a prerequisite to a witness's testimony being considered. FED. R. EVID. 602.

49.     This objection is raised not only to preserve the record but also to highlight the unreliability and inadmissibility of the evidence upon which MMA attempts to rely.

50.     For the foregoing reasons, MMA respectfully requests the Court sustain its evidentiary objections and disregard the Moseley Declaration.

### VI.     RULE 56(D) PRECLUDES SUMMARY JUDGMENT AT THIS TIME

51.     Although this Court has already ruled on GLF's Rule 56(d) motion, GLF believes it is appropriate to reurge it here. Accordingly, GLF incorporates herein by reference the arguments and evidence provided in its *Emergency Motion of Plaintiff Pursuant to Federal Rule 56(d) and Equity to Extend the Response Deadline to Defendant's Motion for Summary Judgment* (Docket No. 82) (the "**56(d) Motion**") and its attachments. GLF notes that much of the discovery requests identified in the 56(d) Motion has not yet been responded to by third parties and, more importantly, GLF has not yet received responses from the discovery GLF served on the Debtor.

### VII.     CONCLUSION

Because the MSJ is procedurally defective, MMA has failed to meet its burden, and GLF has raised material facts in dispute, GLF respectfully asserts that the Motion for Summary Judgment should be denied.

**WHEREFORE**, GLF respectfully requests this Court deny Defendant's Motion for Summary Judgment and grant GLF such other and further relief to which it is entitled.

Dated:  July 7, 2025                              Respectfully submitted,

**RUTH A. VAN METER, P.C.**

By:  _/s/ Ruth Van Meter_
    Ruth Van Meter
    Texas State Bar No. 20661570
    ruth@vanmeterlaw.com
9322 Shady Lane Circle
Houston, Texas 77063
(713) 858-2891 (Direct)

**COUNSEL FOR CRISTÓBAL M. GALINDO, P.C. D/B/A GALINDO LAW FIRM**

**- AND –**

**HAYWARD PLLC**

By:  _/s/ Charlie Shelton_
    Charlie Shelton
    Texas State Bar No. 24079317
    CShelton@HaywardFirm.com
7600 Burnet Road, Suite 530
Austin, Texas 78757
(737) 881-7100 (telephone/fax)

**COUNSEL FOR Cristóbal M. GALINDO, P.C. D/B/A GALINDO LAW FIRM**

<u>**CERTIFICATE OF SERVICE**</u>

      The undersigned hereby certifies that on July 7, 2025, a true and correct copy of this Response was filed with the Court and served via the Court's CM/ECF system upon all parties registered to receive such electronic service in this bankruptcy case, including the U.S. Trustee and the following parties.

Miriam Goott
Walker & Patterson, P.C.
4815 Dacoma
Houston, Texas 77092
713.956.5577
713.956.5570 fax
mgoott@walkerandpatterson.com

                                        *Ruth Van Meter*
                                        Ruth Van Meter